Charles S. ETENBURN,
Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. SD 30503.

Missouri Court of Appeals,
Southern District,
Division One.

May 17, 2011.

Craig A. Johnston, Columbia, MO, for Movant–Appellant.

Chris Koster, Attorney General, and Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Charles S. Etenburn ("Movant") appeals the motion court's denial of his Rule 24.035 motion for post-conviction relief.[1] He claims the motion court clearly erred in concluding that the plea court had jurisdictional authority to amend the written judgments in his three criminal cases to omit Movant's placement in the Department of

---

1. All references to rules are to Missouri Court Rules (2010), unless otherwise indicated.

Corrections ("DOC") shock incarceration program in accordance with section 559.115.3 and in concluding that, even if the amendments were improper, Movant nevertheless did not suffer any resulting prejudice.[2] We determine that the motion court's latter finding—Movant was not prejudiced by such amendments—is not clearly erroneous in that the amendments' effect comported with the oral pronouncements of sentences by the plea court. We affirm the motion court's denial of Movant's motion but remand for the motion court to correct the original written judgments to reflect the plea court's oral pronouncement of sentence in each case.

### Factual and Procedural Background

In accordance with a purported comprehensive plea agreement in three different criminal cases, Movant pleaded guilty to one count of stealing (Phelps County Circuit Court Case No. 25R03062107F–01), in violation of section 570.030, RSMo Cum. Supp.2006; four counts of forgery (Phelps County Circuit Court Case No. 25R03061216F–01), in violation of section 570.090, RSMo Cum.Supp.2003; and one count of possession of a controlled substance (Phelps County Circuit Court Case No. 25R03061030F–01), in violation of section 195.202, RSMo 2000. The attempted consummation of this plea agreement occurred in all three cases simultaneously during one proceeding before the plea court on April 29, 2008. At the plea court's suggestion and with Movant's agreement, general issues and questions related to all cases and counts would be addressed collectively, but issues and questions specifically related to a particular case or charge would be addressed separately.

After asking Movant a series of general questions, the plea court indicated to Movant that she would next address each individual case, with the first being that for possession of a controlled substance. The plea court heard testimony from Movant as to the range of punishment and the factual basis for this charge. After finding that a factual basis existed for the charge, the plea court asked the prosecutor to state the plea agreement for the record. In response, the prosecutor stated:

> ... Upon a successful plea of guilty, the State has promised to recommend in this case that the [Movant] will be sentenced to the Missouri Department of Corrections for a period of ten years under 559.115 general shock, but that that sentence will be run consecutively with the other two cases that we are going to hear in a few moments.
>
> ...
>
> In addition, Your Honor, upon–if the [Movant] is discharged within the first 120 days, that the [Movant] will be tested for entry into the Phelps County drug court program. And if he is deemed to be a candidate for drug court, that that would be a condition of any probation that he would receive after the first 120 days.

Upon inquiry by the plea court, both Movant and his plea counsel acknowledged that this was their understanding of the plea agreement. In response to his plea counsel's questions, Movant acknowledged that he understood that he would "be going to the Department of Corrections for 120–day general shock" and that "at the end of that 120 days, it's up to the Judge whether or not [he was] let out of that 120–day shock."

2. All references to section 559.115 are to RSMo Cum.Supp.2005, unless otherwise indi- cated.

The plea court next addressed the stealing charge by inquiring of Movant about the applicable range of punishment and the factual basis for his plea on that charge. In response to questions from plea counsel, Movant indicated that he understood "that the recommendation from the prosecutor is essentially the same as the first case that we did, that you will still have to do drug court upon your release from the 120[-day shock]" and "then it's up to the Judge that you be released at the end of the 120[-day shock][.]" When asked by the plea court, the prosecutor stated, "And the recommendation, again, is ten years in the DOC under 559.115 general shock[,]" with the same drug court provision should Movant be released on probation after 120 days. Upon inquiry by the plea court, both Movant and his plea counsel acknowledged that this was their understanding of the plea agreement.

Next, the plea court addressed the third case that involved the four counts of forgery. The plea court inquired of Movant as to the range of punishment and the factual basis for each count. In response to plea counsel's questions, Movant understood that he would be "sentenced under 559.115 for a 120 general shock in the Missouri Department of Corrections" and that "it's up to the Judge whether or not you are let out at the end of that 120 days."

Returning to the stealing case, the plea court made a finding that a factual basis for the plea of guilty existed and adjudged Movant guilty of that offense. In response to the plea court's inquiry, Movant waived a sentencing assessment report. The plea court granted allocution and sentenced Movant to ten years in the DOC and to "general shock incarceration" in accordance with section 559.115.

After pronouncing the sentence in the stealing case, the following colloquy occurred:

THE COURT: .... Now, is there anything that I have overlooked in this sentencing?

[Prosecutor]: Yes, Your Honor, there is one thing and that is that they are consecutive. You haven't addressed that yet.

THE COURT: Well, I haven't gotten to it—the second one yet.

[Prosecutor]: I understand.

THE COURT: Okay. I will—I will get that, but I'm not there yet. I can't make it consecutive when I haven't sentenced him on anything else yet.

[Prosecutor]: I understand.

THE COURT: But thank you. I appreciate you pointing all of these things out. . . .

[Movant's Plea Counsel]: Your Honor, there is—if I may, there's one matter. We spoke in Chambers about [Movant] being allowed some time before he reports for the 120–day shock incarceration so that he can talk with an attorney out of another county and—and try to get some affairs in order.

THE COURT: All right. And I'll consider that. Let me get-

[Plea Counsel]: Okay.

THE COURT:—to the bottom of this first, okay?

I'm trying to work one way to another.

All right. Sir, I will—I'm—I will be telling you about Rule 24.035. I'm gonna do that at the end of all these cases.

[Movant]: Okay.

THE COURT: Okay. So at this point, I'm simply—and I'll be inquiring as to assistance of counsel at the end of all the cases. So I'm gonna move on into the sentencing on that, instead of inquiring

on each individual case, okay? All right. Any questions about that, sir?

[Movant]: No, Your Honor.

The plea court then returned to the possession case, found that a factual basis existed for Movant's plea, and adjudged Movant guilty of that offense. After Movant waived a sentencing assessment report, the plea court granted allocution and sentenced Movant "pursuant to the requested plea agreement in this matter[ ]" to serve ten years in the DOC and ordered that he be committed under section 559.115 for "general shock incarceration." This sentence was ordered served consecutive to the stealing sentence.

The plea court then found that a factual basis existed for Movant's plea on each of the four counts in the forgery case and found Movant guilty on each count. After Movant waived a sentencing assessment report, the plea court granted allocution and sentenced Movant "pursuant to [his] plea agreement[ ]" to ten years in the DOC on each of the four counts, with "general shock incarceration" in accordance with section 559.115. The sentences on each of these four counts were ordered served concurrent with each other and consecutive to the stealing and possession sentences.

After announcing, "Now, I think on the sentencing, that I am now complete[,]" the plea court turned to Movant's request for a furlough before reporting to the county jail for transport to DOC. The following colloquy then occurred:

THE COURT:.... Now, there has been a request, and your attorney referred to it at the beginning, that you be allowed some time. Apparently you have other cases, sir?

[Movant]: Yeah, I have one.

. . .

THE COURT: Now, sir, what guarantee do I have that you will report back to this Court to go down to the penitentiary?

[Movant]: I can tell you, Your Honor, that I will appear. I have 30 years of my life hanging over my head right now.

THE COURT: All right. You understand that if you don't show up—

[Movant]: I sure do.

THE COURT:—that you won't get second chances, and you won't be going down for 120, but it'll be—

[Movant]: 30 years.

THE COURT:—30 years?

[Movant]: I fully understand that.

THE COURT: All right. Then, sir, what I'm going to do, in order to give you a little bit of time—and I very seldom do this, sir, so please don't prove me wrong, because it'll mean that nobody after you will get this opportunity.

[Movant]: You're the one who's got to call me back on the 120.

THE COURT: Well, that and—and many other things, okay?

[Movant]: Exactly.

THE COURT: All right. Then, sir, what I'm going to do is I'm going to give you until May the 8th.

[Movant]: Okay.

THE COURT: And you are—that's a Thursday. Not this Thursday. Thursday a week from now.

[Movant]: Yes, ma'am.

THE COURT: And you are to report back to the Phelps County Sheriff's Department ... at 5 p.m. on May the 8th.

[Movant]: I'll be here.

THE COURT: Now, if for some reason you behave badly in the meantime, sir, you'll be picked up, and all that gets laid to waste.

Do you understand that?

[Movant]: Yes, Your Honor, I do.

THE COURT: All right. That's just a heads up, sir. I don't do this normally.

[Movant]: Yes, ma'am.

THE COURT: I mean, I think they'll tell you I don't normally do this. I'm giving you the opportunity. If you can get this resolved with your attorney, straighten out whatever matters in your life you need to get done, but you report at five o'clock.

[Movant]: Yes, ma'am.

THE COURT: Any questions about that?

[Movant]: No, ma'am. Thank you.

THE COURT: You're welcome, sir.

The plea court advised Movant of his rights under Rule 24.035 and inquired of Movant as to the assistance of his plea counsel. The plea court then inquired, "Now, is there anything that I have overlooked regarding the sentencing today?" Other than some questions by Movant regarding court costs, no one indicated that anything had been overlooked. Before the proceedings concluded, however, the plea court again advised Movant that he was being given an opportunity to take care of other matters and that he needed to report to the jail at 5:00 p.m. on May 8.

Stipulated typewritten docket entries dated April 29, 2008, and signed by Movant, plea counsel, the prosecuting attorney, and the plea court were filed in each case. Each docket entry recites, in pertinent part, that

.... The Court finds that ... [Movant] has freely and voluntarily, in open Court pleaded guilty to the charge and signed a petition to enter a plea of guilty with the full knowledge and understanding of the contents thereof; that the plea is not the result of force or threats or of promises, apart from the plea agreement filed herein; that [Movant's] willingness to plead guilty does not result from prior discussions between the Prosecuting Attorney and [Movant] or [Movant's] attorney, except as reflected in the plea agreement filed herein.... [Movant] signs and files petition to enter plea of guilty.

In addition to reflecting a ten-year sentence in each case, each docket entry stated "[Movant] committed under Section 559.115 RSMo for general shock incarceration" and

If [Movant] is released during the first 120 days of his sentence, [Movant] must evaluated [sic] for his inclusion in the Phelps County Drug Court, and if he is determined eligible by the drug court, a condition of his probation shall be that he successfully complete the Drug Court Program.

Although each docket entry referred to a "plea agreement filed herein," nothing in the legal file on appeal reflects such a filing. None of the docket entries mention anything about a furlough or any consequences to be imposed for violation of a furlough, except for a handwritten notation, apparently written and initialed by the plea court, on the bottom of the docket entry in the possession case stating "[Movant] ordered to appear for commitment on May 8, 2008 @ 5 P.M. @ Phelps County Jail."

Also on April 29, 2008, the plea court executed written judgments in each case sentencing Movant to consecutive ten-year terms of incarceration in the DOC, committing Movant to the shock incarceration *program* under section 559.115, and ordering Movant to appear at the jail for commitment on May 8, 2008, at 5:00 p.m.

Movant failed to appear as ordered on May 8, 2008. The next day, the plea court issued a *capias* warrant for his arrest,

which was served on May 20, 2008. Two days later, the plea court held a hearing during which the State asked the plea court to "withdraw itself from maintaining the jurisdiction for the first 120 days and simply ask that [Movant] be committed and order the previously imposed sentence ordered executed." Movant, in offering his reasons for not appearing as ordered, told the plea court that he "wasn't trying to avoid the 120." Plea counsel requested that Movant "be given the opportunity to continue on that 120 ... and drug court and get his life back on track." The plea court told Movant that he had forfeited his right to be considered for probation. Following the hearing, the plea court set aside its prior judgments and entered new judgments identical to the April 29, 2008, judgments except for omitting the provision in each placing Movant in the shock incarceration *program* in accordance with section 559.115.

Movant timely filed a motion for post-conviction relief pursuant to Rule 24.035. Counsel was appointed, and an amended motion was filed. Following an evidentiary hearing, the motion court, relevant to this appeal, made the following findings:

7. Movant raises two claims, but his primary argument is that this Court lost jurisdiction to rescind the opportunity to be released on probation after 120 days under Section 559.115, citing *Allen v. State,* 219 S.W.3d 273 (Mo.App. S.D. 2007).

8. The Court is at a loss how it can be that the Court "retains jurisdiction" to place a defendant on probation after 120 days, but somehow has no "jurisdiction." Nevertheless, the facts in this case are clearly distinguishable from *Allen.* In this case, Movant's entitlement to a 120 day call back was clearly contingent upon him abiding by all of the conditions set by the Court-including him appearing for incarceration on May 8, 2008.

A. The Court specifically stated: "Now, sir, what guarantee do I have that you will report back to this Court to go down in the penitentiary?" The Movant responded "I can tell you, your Honor, that I will appear. I have 30 years of my life hanging over my head right now." The Court then asked Movant, "You understand that if you don't show up ... that you won't get second chances, and you won't be going down for 120, but it'll be ... 30 years." Movant stated explicitly that "I fully understand that."

B. The record also reflects that this was a matter that was discussed prior to going on the record and was clearly understood to be part of the plea agreement itself. Needless to say, the Movant's testimony suggesting otherwise is untrue and the Court can state with certainty that Movant's claim is not credible.

C. Movant's Claim 8(a) is denied. His appearance for incarceration was clearly part of the plea agreement in this case and a condition of him being entitled to 120 day call back under Section 559.115. Movant understood that condition, yet violated the agreement. This Court was not improperly attempting to retain jurisdiction; instead, the Court was enforcing the plea agreement.

10. The Court further finds that even if there were some merit to Movant's Claim 8(a), to the extent he is correct that the Court could not rescind its granting of 120 recall, Movant would still not be entitled to relief. In this case, Movant has, failed to sustain his burden to establish that he would have received probation after 120 days. The decision to release Movant on probation after 120 days is discretionary with this

Court. Movant has the burden to prove all of his claims. This includes his burden to prove that he would have been subject to recall and placed on probation after the 120 period. Movant did not do so. "Movant bears the burden of proving, by a preponderance of the evidence, that the motion court erred." *Huth v. State*, 976 S.W.2d 514, 516 (Mo.App. 1998).

11. This decision by this Court does not affect the voluntariness of Movant's guilty plea. Movant was not promised that he would be placed on probation after serving 120 days; Movant knew that 120 days was a possibility, but he understood clearly that his plea might mean he would serve the sentence imposed. Thus, this conclusion by this Court does not mean that Movant's guilty plea was involuntary and his request to have it set aside is denied.

(Internal citations to the record omitted).

Movant timely appealed.

### Standard of Review

Appellate review of the denial of postconviction relief is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Dorsey v. State*, 115 S.W.3d 842, 844–45 (Mo. banc 2003). Findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, this Court is left with a definite and firm impression that a mistake has been made. *Woods v. State*, 176 S.W.3d 711, 712 (Mo. banc 2005).

### Discussion

In his sole point, Movant contends that the motion court clearly erred in denying his postconviction motion because the plea court "did not have the authority or jurisdiction to amend [Movant's] judgment and sentence on May 22, 2008[.]" Movant posits "that on April 29, 2008[,] the sentencing court accepted [Movant's] guilty pleas and, pursuant to a plea agreement, fixed his punishment at a total of 30 years in prison, but with the negotiated provision that [Movant] was also committed to the 120–day Shock Incarceration Program under § 559.115." Thus, Movant contends, the unauthorized amendment deleting the commitment to the 120–day shock incarceration program rendered Movant's "guilty pleas involuntary, unknowing, and unintelligent, in violation of [Movant's] right under Rule 24.02(d) and to due process of law[.]"

Movant fails, however, to mention in his point or anywhere in his initial brief the motion court's finding that the amendments to the judgments, even if unauthorized, did not prejudice Movant because he failed to "sustain his burden to establish that he would have received probation after 120 days" in that "[t]he decision to release Movant on probation after 120 days is discretionary with" the plea court.

Only in his reply brief does Movant contend, for the first time on appeal, that this finding by the motion court is clearly erroneous. He claims he was not required to prove that he would have received probation from the plea court within 120 days in order to demonstrate that the amended judgments prejudiced him. Rather, relying upon the original written judgments in each case assigning him to the shock incarceration *program*, Movant argues that he was prejudiced because he was denied the opportunity for probation by successfully completing that program as determined by the board of probation and parole. He points out that section 559.115.3 provides that upon report by the board of probation and parole of an offender's successful completion of the shock incarceration program, the offender shall be released on probation unless the plea court holds a hearing after

ninety days, but before the expiration of 120 days, and determines that such release would constitute an abuse of discretion. Movant emphasizes that upon successful completion of a DOC program under section 559.115.3, probation is required absent an abuse of discretion by the board of probation and parole. *State ex rel. Mertens v. Brown,* 198 S.W.3d 616, 618 (Mo. 2006); *State ex rel. Dorsey v. Wilson,* 263 S.W.3d 790, 791 (Mo.App.2008). Thus, Movant argues, the plea court's unauthorized amendment to the judgments in Movant's cases, omitting Movant's assignment to the shock incarceration *program,* deprived Movant of the opportunity as provided in the original written judgments in each case of participating in this program, the possibility of obtaining a report from the board of probation and parole of successful completion of the program, and the possibility of probation because the board's report was not an abuse of its discretion. None of these, Movant contends, required him to prove that the plea court, acting within its discretion, would have granted him probation during the 120–day period after sentencing.

■ Notwithstanding that Movant failed to properly preserve this issue for appellate review in his initial brief, *see Smith v. Brown & Williamson Tobacco Corp.,* 275 S.W.3d 748, 784 (Mo.App.2008), Movant's argument has no merit because Movant was not assigned to the shock incarceration *program* in the first instance. This is so because the provisions in the original written judgments in each case assigning him to that program varied materially from the plea court's oral pronouncements of sentence in each case.

■ "Generally, the written sentence and judgment should reflect the trial court's oral pronouncement of sentence before the defendant." *Rupert v. State,* 250 S.W.3d 442, 448 (Mo.App.2008) (citing *State v. Patterson,* 959 S.W.2d 940, 941 (Mo.App.1998)). Here, in pronouncing sentence in each case, the plea court sentenced Movant to ten years in the DOC and to *"general shock incarceration"* in accordance with section 559.115. (Emphasis added). These pronouncements, considered on their face in isolation from the rest of the record, are ambiguous because they could refer to the plea court's discretionary power to place a defendant on probation during the first 120 days following delivery to the DOC, as provided by section 559.115.2, or they could refer to the placement of Movant in the DOC's shock incarceration program under section 559.115.3.[3] Where a pronouncement of

---

**3.** Sections 559.115.2 and .3 provide as follows:

> **2.** Unless otherwise prohibited by subsection 5 of this section, a circuit court only upon its own motion and not that of the state or the offender shall have the power to grant probation to an offender anytime up to one hundred twenty days after such offender has been delivered to the department of corrections but not thereafter. The court may request information and a recommendation from the department concerning the offender and such offender's behavior during the period of incarceration. Except as provided in this section, the court may place the offender on probation in a program created pursuant to section 217.777,

> RSMo, or may place the offender on probation with any other conditions authorized by law.
> **3.** The court may recommend placement of an offender in a department of corrections one hundred twenty-day program. Upon the recommendation of the court, the department of corrections shall determine the offender's eligibility for the program, the nature, intensity, and duration of any offender's participation in a program and the availability of space for an offender in any program. When the court recommends and receives placement of an offender in a department of corrections one hundred twenty-day program, the offender shall be released on probation if the department

sentence is ambiguous, an appellate court may examine " 'the entire record to determine if the oral sentence can be unambiguously ascertained.' " *State ex rel. Zinna v. Steele,* 301 S.W.3d 510, 514 (Mo. banc 2010) (quoting *Johnson v. State,* 938 S.W.2d 264, 265 (Mo. banc 1997)). An examination of the entire record here clarifies any ambiguity in the oral pronouncements.

The State announced the plea agreement on the record during the plea proceeding as calling for Movant to be "sentenced to the Missouri Department of Corrections for a period of ten years *under 559.115 general shock.*" (Emphasis added). Movant and his plea counsel acknowledged in each case that this was their understanding of the plea agreement. In response to plea counsel's questions, Movant further acknowledged that he understood he would "be going to the Department of Corrections for 120–day *general shock*" and that "at the end of that 120 days, *it's up to the Judge whether or not [he was] let out of that 120–day shock.*" (Emphasis added). The stipulated docket entries signed by all, including

Movant and the plea court, ordered "[Movant] committed under Section 559.115 RSMo for *general shock incarceration.*" (Emphasis added). After the oral pronouncement of sentence in all three cases, Movant acknowledged to the plea court during his request for a furlough that "[y]ou're the one who's got to call me back on the 120." There was no mention during the entire plea proceeding of Movant's placement in the shock incarceration program or the concomitant involvement of the board of probation and parole in a probation decision as provided under section 559.115.3. Thus, the record is clear and unambiguous. The plea court's pronouncement of sentence in each case to include "general shock incarceration" was referring to the power reserved to its discretion by section 559.115.2 to place Movant on probation within 120 days of his delivery to DOC and to request a report or recommendation from DOC for that purpose.

Therefore, the original written judgments committing Movant to the shock incarceration *program* deviated from the oral pronouncement of sentence made by

of corrections determines that the offender has successfully completed the program except as follows. Upon successful completion of a treatment program, the board of probation and parole shall advise the sentencing court of an offender's probationary release date *thirty days prior to release.* The court shall release the offender unless such release constitutes an abuse of discretion. If the court determined that there is an abuse of discretion, the court may order the execution of the offender's sentence only after conducting a hearing on the matter within ninety to one hundred twenty days of the offender's sentence. If the court does not respond when an offender successfully completes the program, the offender shall be released on probation. Upon successful completion of a shock incarceration program, the board of probation and parole shall advise the sentencing court of an offender's probationary release

date thirty days prior to release. The court shall follow the recommendation of the department unless the court determines that probation is not appropriate. If the court determines that probation is not appropriate, the court may order the execution of the offender's sentence only after conducting a hearing on the matter within ninety to one hundred twenty days of the offender's sentence. If the department determines that an offender is not successful in a program, then after one hundred days of incarceration the circuit court shall receive from the department of corrections a report on the offender's participation in the program and department recommendations for terms and conditions of an offender's probation. The court shall then release the offender on probation or order the offender to remain in the department to serve the sentence imposed.

the plea court in Movant's presence in each case. *See Rupert,* 250 S.W.3d at 448.[4] This was a material deviation because it changed Movant's possible grant of probation from within the discretion of the plea court under section 559.115.2, in accordance with the oral pronouncement of sentence implementing the plea agreement, to within the discretion of the board of probation and parole under section 559.115.3, as pointed out by Movant *supra.*

 A criminal " 'judgment derives its force from the rendition of the court's judicial act and not from the ministerial act of its entry upon the record.' " *Patterson,* 959 S.W.2d at 941 (quoting *State v. Williams,* 797 S.W.2d 734, 738 (Mo.App. 1990)). "When the two are in conflict, the oral sentence controls, and the written judgment is erroneous." *Patterson,* 959 S.W.2d at 941. Thus, Movant's argument, based upon his assignment to the shock incarceration *program* in the erroneous original written judgments, fails to support his claim that the motion court's lack-of-prejudice finding is clearly erroneous.

In the absence of any proven prejudice to Movant as a result of the entry of the amended judgments, Movant is not entitled to any relief on his claim. *See Dean v. State,* 950 S.W.2d 873, 876 (Mo.App. 1997). Thus, any opinion as to the plea court's authority to enter them would be advisory and is unnecessary and inappropriate. *See State v. Oakes,* 84 S.W.3d 562, 564 (Mo.App.2002) (appellate courts do not render advisory opinions nor decide nonexistent issues). Movant's point is denied, and the motion court's denial of Movant's motion for post-conviction relief is affirmed.

Nevertheless, when it is determined in a post-conviction relief case that a written sentence differs materially from the oral pronouncement of sentence, "[a] limited remand is necessary for the trial court to correct the written judgment to reflect the oral pronouncement of sentence." *Hall v. State,* 190 S.W.3d 533, 535 (Mo.App.2006); *Samuel v. State,* 156 S.W.3d 482, 484 (Mo. App.2005); Rule 24.035(j) (motion court may "correct the judgment and sentence as appropriate"). Therefore, while we affirm the motion court's denial of Movant's motion for post-conviction relief, we remand the case for the limited purpose to direct the motion court to correct the original written judgment in each of Movant's three underlying criminal cases to accurately reflect the oral pronouncement of sentence in each. *See Hall,* 190 S.W.3d at 535.

BARNEY, P.J., and BURRELL, J., concur.

4. The plea court retained authority to amend its oral pronouncement until a written judgment was entered, so long as it did so in Movant's presence. *Rupert,* 250 S.W.3d at 449. Nothing in the record supports that such an amendment occurred here. Once the plea court entered written judgments, its jurisdiction to amend the sentences as contained in those judgments was exhausted. *Id.* at 449–450; *Allen v. State,* 219 S.W.3d 273, 277 (Mo.App.2007).